**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**UNITED STATES OF AMERICA**

vs.                                                              CASE NO. 1:08cr9-MMP/AK

**JERRY CARL SLEDGE,**

    **Defendant.**
_____/

**AMENDED REPORT AND RECOMMENDATION**

**CORRECTING SCRIVENERS ERROR**

    This cause was referred to the undersigned for hearing and for preparation of a Report and Recommendation regarding disposition of Defendant Jerry Carl Sledge's motion to suppress.  Doc. 25.  As grounds for this motion, Defendant asks the Court to "suppress from evidence all items obtained pursuant to the search of defendant's residence on March 29, 2008, conducted in violation of U.S. Const. Amend. IV."  *Id*.  As grounds for this motion, Defendant charges that the application for the search warrant in state court failed to advise the court that "entrance on defendant's fenced property was without consent and required climbing over a closed, locked gate," and that before the officers crossed the fence, they "only had reasonable suspicion that marijuana plants

were located on the property" and did not obtain probable cause until they looked inside Defendant's home, which was a warrantless search of his property.  *Id*.

The testimony and evidence at the hearing was as follows.  Sergeant Karen O'Quinn with the Alachua County, Florida Sheriff's Office, received several anonymous tips that Defendant was growing marijuana on his property.  Sgt. O'Quinn had conducted prior surveillances of Defendant, but none had been fruitful.  On March 29, 2008, Sgt. O'Quinn parked her patrol car on SW 154th Street in Archer, Florida, and, using 10x50 binoculars, began observing Defendant's residence; she did not, however enter upon Defendant's property.  Defendant's ten-acre property is surrounded by open wire fencing, and at its entrance is a locked, horizontal pipe gate.  There were no signs on Defendant's property warning trespassers, the signs which Defendant had placed there previously having fallen off; however, there were "No Trespassing" signs on the neighbor's property facing inward toward Defendant's property.  Sgt. O'Quinn began observing Defendant's property at approximately 7:45 p.m., a minute before sundown. Within the next 15 minutes, she observed Defendant make several trips carrying large pots of what she believed to be marijuana plants from the inside of the residence to an outside area.  During each of these trips, Sgt. O'Quinn observed Defendant [c]arrying marijuana plants in both hands, with each observed trip lasting approximately twenty seconds.  She further testified that the front door of Defendant's home was open during this time and that she could see what she believed to be illuminated "grow lights" as well.

Sgt. O'Quinn has approximately eight and one-half years law enforcement experience, including patrol and narcotics cases.  She attended several narcotics

investigation courses and is a certified drug recognition officer in the State of Florida. She has been involved in approximately 50 cases relating to marijuana.

Following these observations, Sgt. O'Quinn called for back up and was shortly joined by Sgt. Shawn Brooks of the Alachua County Sheriff's Office and Detective Roy Long of the Gainesville, Florida Police Department.  The three officers entered Defendant's property via an opening in the posts between the neighbor's fence and the gate to Defendant's property.  Sgt. Brooks testified that he believed this to be an intentional gap in the fencing to permit entrance onto and exit from the property by foot without the necessity of having to open the gate.   Using flashlights, the officers began walking up Defendant's unpaved driveway.  Both O'Quinn and Brooks testified that as they neared the residence, they could smell the odor of marijuana.  When they reached the power pole to the left of the driveway, which appears to run parallel to a turn in the fencing closer to the residence, *see* D-16, the officers encountered Defendant, who was walking down the driveway towards them carrying a machete, reportedly for self-protection.  In compliance with the officers' orders, Defendant dropped the machete.

Defendant was advised that he was being detained, though not arrested, and he was handcuffed.  Sgt. Brooks then walked around the residence as part of a "security sweep" and at the back discovered a partially curtained window through which a grow room was plainly visible.  Using his flashlight, he also noticed numerous large marijuana plants outside and within close proximity of the residence.  Following these observations, the officers asked Defendant to produce some identification and to consent to a search of his home.  Initially, Defendant was cooperative but later changed

his mind.  Testimony of Defendant and the officers is in dispute as to how and when Defendant was advised of his *Miranda* rights; however, Defendant acknowledged that he never asked the officers to leave his property.

Based on this information, a state court judge issued a search warrant for the residence and property, which resulted in Defendant's indictment in this Court for manufacturing and possessing with intent to manufacture and distribute over 100 marijuana plants.

## **DISCUSSION**

The Fourth Amendment protects the Defendant from unreasonable searches and seizures wherein he has a reasonable expectation of privacy.  A reasonable expectation of privacy has two elements: first, the Defendant must actually have a subjective expectation of privacy under the circumstances, and second, the circumstances of this expectation must be such that society accepts them as reasonable.  *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J. concurring).

Defendant asks the Court to begin its legal analysis with the officers' entry through the fence to his property.  Instead, we open our inquiry with Sgt. O'Quinn's binocular observations made from off Defendant's property some 900 feet from his home.  We begin with the plain view and open fields doctrines, recognized exceptions to the Fourth Amendment requirement for search warrants.  As noted above, Sgt. O'Quinn's observations resulted in her belief that she had witnessed Defendant committing a felony and proceeded on that basis.  Despite effective cross-examination, Sgt. O'Quinn remained steadfast in her testimony that she had seen Defendant carrying marijuana plants in plain view outside his home.

The underlying requisite for the plain view exception is that the officer must make her observations from a place where she has a lawful right to be, and she may not move any natural obstructions to her view.  Sgt. O'Quinn's testimony that she made these observations from off Defendant's property is uncontroverted.  While Defendant argues that Sgt. O'Quinn had only a reasonable suspicion of wrongdoing, the Court concludes from her testimony that Sgt. O'Quinn had reason to believe she had observed Defendant committing a felony.  It therefore follows that the entry of Sgt. O'Quinn and the other officers was made in pursuit of their law enforcement responsibilities and was not an unlawful trespass.

Turning now to Defendant's argument about Sgt. O'Quinn's entry onto his property, it is beyond dispute that the Fourth Amendment protects only a person's reasonable expectation of privacy, not his subjective expectation of privacy, and thus, it does not protect activities occurring "out of doors in fields, except in the area immediately surrounding the home."  *Oliver v. United States*, 466 U.S. 170, 177-178 (1984).  The area around the home, the curtilage, is that area which "harbors those intimate activities associated with domestic life and the privacies of home."  *United States v. Dunn*, 480 U.S. 294, 300 (1987).  "Open fields," which are regarded for Fourth Amendment purposes as tantamount to public places, include undeveloped or unoccupied areas outside of the curtilage, even if those areas are neither "open" nor "fields" as those terms are commonly understood.  *Id.*

Curtilage is not defined by the property line.  *Id.* at 301.  Nor is the existence of fencing alone determinative of curtilage.  *Id.*  Instead curtilage is defined by reference to four factors that reflect upon whether an individual reasonably may expect the area to

be treated as an extension of the home.  *Id.* at 301 n. 4.  The four factors are (1) the proximity of the area to the house, (2) whether the area is within an enclosure surrounding the house, (3) the use of the area, and (4) the steps taken to protect the area from observation by the public.  *Id.* at 301.

Defendant argues that because he had blocked the entrance to his driveway with a fence and a locked gate, he had a reasonable expectation of privacy beginning at that gate, and the officers' warrantless entry violated the Fourth Amendment.  With the *Dunn* factors in mind, however, the Court does not believe that the officers unlawfully intruded upon the curtilage of Defendant's property.  The driveway area is not an area where intimate activities of the home take place.  Instead, it is one of the more public areas of a property and provides the principal means for access to the house from the street.  The fencing surrounding the property was not privacy fencing but was open and allowed unimpeded public viewing of the front and sides of the driveway and property.  Defendant presented no persuasive evidence that the officers had to remove any of the fencing or any other barrier to enter the driveway area of the property along the footpath, and he acknowledged himself that there were no posted warning signs at the entrance to the driveway.  The language Defendant cites from *Oliver* as supporting the notion that instant Defendant "had done all that could be expected of him to assert his privacy" in the driveway area is inapposite, as it is language from the lower state court which was reversed, not from the Supreme Court itself.

While the "use of vision enhancing devices can taint an otherwise valid surveillance...when the devices allow the observer to view not only activities the homeowner should realize might be seen by unenhanced viewing but also the details of

activities the homeowner legitimately expects will not be observed," when the activities "could be viewed with the naked eye from a position...on neighboring property," the use of binoculars is not *per se* unconstitutional. *United States v. Whaley*, 779 F.2d 585, 590-92 (11th Cir. 1985). It was undisputed at the hearing that anyone standing on the neighbor's side of the fence could have seen Defendant moving the marijuana plants without the need for binoculars, and the fact that the area around Defendant's home is open to the neighbor or anyone else on the neighbor's property undermines any reasonable expectation of privacy which Defendant may have had even in the area immediately surrounding his home. Although Defendant attempted to cast doubt on Sgt. O'Quinn's ability to identify marijuana plants from a distance of approximately 900 feet at sundown without night vision enhancement, his efforts, while intriguing, were insufficient at this stage to discredit either the officer's drug identification credentials or her honest belief that the plants Defendant was transporting from the interior of the residence to the outdoors were in fact marijuana. The central facts established through Sgt. O'Quinn's testimony was that she made her observations from off the Defendant's property; the observations were made outside the Defendant's home; the binoculars allowed her to determine that the plants were marijuana; and she thus formed a good faith belief that Defendant was committing a felony. Moreover, Defendant moved the plants under circumstances where anyone could have observed them. Indeed, it seems likely that he allowed others to see the marijuana plants in his yard, which caused the tips to the police in the first instance. *See also Florida v. Riley*, 483 U.S. 445 (1989) (officer's observation with naked eye of interior of partially covered greenhouse in residential backyard from helicopter was not Fourth Amendment search requiring

1:08cr9-MMP/AK

warrant); *California v. Ciraolo*, 476 U.S. 207 (1986) (warrantless aerial observation of fenced-in backyard within curtilage of home was not unreasonable under Fourth Amendment).

The motion to suppress should therefore be denied.[1]

**While the parties would normally have 10 days in which to file their objections to this R&R, because trial is set for Monday, August 18, 2008, and the undersigned has no explicit or agreed upon authority to shorten that deadline, they should nevertheless file their objections, if any, to this R&R without delay.**

Accordingly, it is respectfully **RECOMMENDED** that the motion to suppress, Doc. 25, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this **14th** day of August, 2008.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] The Court strongly suggests that the jury would better understand the events in this case if the parties would prepare a joint exhibit delineating property lines, key locations, and distances pertinent to the case.

1:08cr9-MMP/AK